James Kaste (Wyo. Bar No. 6-3244)
Deputy Attorney General
Travis Jordan (Wyo. Bar No. 7-5721)
Senior Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895 (phone)
(307) 777-3542 (fax)
james.kaste@wyo.gov
travis.jordan@wyo.gov

*Attorneys for Petitioner State of Wyoming*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| WESTERN ENERGY ALLIANCE and PETROLEUM ASSOCIATION OF WYOMING, | No. 21-cv-13-SWS (Lead Case) |
| Petitioners, v. | **REPLY BRIEF IN SUPPORT OF WYOMING'S PETITION FOR REVIEW OF FINAL AGENCY ACTION** |
| JOSEPH R. BIDEN, JR., in his official capacity as President of the United States; DEB HAALAND, in her official capacity as Secretary of the Interior; and THE UNITED STATES BUREAU OF LAND MANAGEMENT, | |
| Respondents, and | |
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.* ("Conservation Groups"), and ALTERRA MOUNTAIN COMPANY, *et al.* ("Business Coalition"), | **HEARING REQUESTED** |
| Intervenor-Respondents. | |

STATE OF WYOMING,

        Petitioner,

    v.

THE UNITED STATES DEPARTMENT
OF INTERIOR; DEBRA ANNE
HAALAND, in her official capacity as
Secretary of Interior; THE BUREAU OF
LAND MANAGEMENT; NADA
CULVER, in her official capacity as
acting Director of the Bureau of Land
Management; and KIM LIEBHAUSER,
in her official capacity as the acting
Wyoming State Bureau of Land
Management Director,

        Respondents, and

CENTER FOR BIOLOGICAL
DIVERSITY, *et al.* ("Conservation
Groups"), and ALTERRA MOUNTAIN
COMPANY, *et al.* ("Business Coalition"),

        Intervenor-Respondents.

No. 21-cv-56-SWS
(Joined Case)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

GLOSSARY .................................................................................. viii

INTRODUCTION ............................................................................. 1

I.     The *de facto* moratorium exists and is subject to review by this
       Court ............................................................................................ 2

II.    This Court can compel quarterly oil and gas lease sales ...................... 6

III.   The Secretary violated the MLA and its implementing
       regulations by failing to hold quarterly lease sales ........................... 9

       A.    Quarterly lease sales are mandatory under the MLA .............. 10

       B.    The Bureau Manual cannot be read independently of the
             Secretary's implementing regulations ..................................... 12

       C.    This Court should not afford deference to the Secretary's
             definition of "available" in the Bureau Manual ...................... 15

IV.    The Secretary's *pro forma* justifications for canceling individual
       lease sales were arbitrary and capricious ......................................... 17

       A.    The Secretary's decision to cancel the First Quarter Lease
             Sale did not consider relevant statutory requirements ............. 17

       B.    Land was available for leasing in the First Quarter ................. 18

C.   The Secretary's argument that litigation precluded leasing is unsupported by the record and is a *post-hoc* rationalization.................................................................. 19

D.   Wyoming has standing to challenge the Second Quarter Lease Sale ................................................................. 22

V.   The Secretary violated FLPMA ......................................... 26

VI.   The Secretary violated NEPA ......................................... 29

VII.   Permanent relief is warranted........................................... 30

CONCLUSION ..................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Am. Bar Ass'n v. U.S. Dep't of Educ.*,
    370 F. Supp. 3d 1 (D.D.C. 2019) ........................................................4

*Am. Hosp. Ass'n v. Burwell*,
    812 F.3d 183 (D.C. Cir. 2016) .........................................................10

*Aracely v. Nielsen*,
    319 F. Supp. 3d 110 (D.D.C. 2018) ....................................................4

*Auer v. Robbins*,
    519 U.S. 452 (1997)................................................................. 16, 17

*Barnhart v. Walton*,
    535 U.S. 212 (2002) ................................................................... 16

*Christensen v. Harris Cty.*,
    529 U.S. 576 (2000) .....................................................................16

*Christopher v. SmithKline Beecham Corp.*,
    567 U.S. 142 (2012) ............................................................... 15, 16

*City of New York v. Mineta*,
    262 F.3d 169 (2d Cir. 2001)...............................................................11

*Dep't of Commerce v. New York*,
    --- U.S. ---, 139 S. Ct. 2551 (2019) ....................................................21

*Devon Energy Prod. Co., LP v. Gould*,
    421 F. Supp. 3d 1213 (D. Wyo. 2019) ..................................................26

*Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla.*,
    426 U.S. 776 (1976) .............................................................. 10, 11

*Fed. Labor Relations Auth. v. Aberdeen Proving Ground*,
    485 U.S. 409 (1988) .......................................................................9

*GasPlus, LLC v. U.S. Dep't of Interior*,
    510 F. Supp. 2d 18 (D.D.C. 2007).......................................................18

*Gonzales v. Oregon,*
  546 U.S. 243 (2006) ........................................................16

*Klamath Siskiyou Wildlands Ctr. v. Boody,*
  468 F.3d 549 (9th Cir. 2006)...........................................29

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,*
  523 U.S. 26 (1998) ...........................................................9

*Louisiana v. Biden,*
  No. 2:21-CV-00778, 2021 WL 2446010 (W.D. La. June 15, 2021)
  (unpublished) ................................................................. 3

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990) ..........................................................5

*Marathon Oil Co. v. Babbitt,*
  966 F. Supp. 1024 (D. Colo. 1997) ...................................8

*Marathon Oil Co. v. Lujan,*
  937 F.2d 498 (10th Cir. 1991)...........................................8

*Mont. Wildlife Fed'n v. Bernhardt,*
  No. CV-18-69-GF-BMM, 2020 WL 2615631 (D. Mont. May 22, 2020)......... 29

*Mount Evans Co. v. Madigan,*
  14 F.3d 1444 (10th Cir. 1994)...........................................6

*Mountain States Legal Found. v. Andrus,*
  499 F. Supp. 383 (D. Wyo. 1980) ............................... 27, 28

*N.M. Farm & Livestock Bureau v. U.S. Dep't of Interior,*
  952 F.3d 1216 (10th Cir. 2020)...................... 10, 12, 14, 15

*Nat'l Mining Ass'n v. Zinke,*
  877 F.3d 845 (9th Cir. 2017).............................................27

*Nat'l Parks & Conservation Ass'n v. FAA,*
  998 F.2d 1523 (10th Cir. 1993)..........................................30

*Norton v. So. Utah Wilderness All.,*
  542 U.S. 55 (2004) ............................................................5

*Nova Health Sys. v. Gandy,*
    416 F.3d 1149, 1155 (10th Cir. 2005) ...............................................26

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) .......................................................................25

*Olenhouse v. Commodity Credit Corp.,*
    42 F.3d 1560 (10th Cir. 1994) ................................................. 18, 20

*Pac. Legal. Found. v. Andrus,*
    657 F.2d 829 (6th Cir. 1981) ..........................................................11

*So.Utah Wilderness All. v. BLM,*
    425 F.3d 735 (10th Cir. 2005) ........................................................16

*Taxpayers Watchdog, Inc. v. Stanley,*
    819 F.2d 294 (D.C. Cir. 1987). .......................................................30

*Teton Historic Aviation Found. v. Dep't of Def.,*
    785 F.3d 719 (D.C. Cir. 2015) ..........................................................7

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015) ..........................................................22

*U.S. Dep't of Energy v. Fed. Labor Relations Auth.,*
    880 F.2d 1163 (10th Cir. 1989) .........................................................9

*United States ex rel. McLennan v. Wilbur,*
    283 U.S. 414 (1931) .........................................................................8

*United States v. Mead Corp.,*
    533 U.S. 218 (2001) .......................................................................16

*W. Energy All. v. Zinke,*
    877 F.3d 1157 (10th Cir. 2017) ......................................................28

*W. Watersheds Project v. Zinke,*
    441 F. Supp. 3d 1042 (D. Idaho 2020) ............................................23

*Westlands Water Dist. v. Nat. Res. Def. Council,*
    43 F.3d 457 (9th Cir. 1994) ............................................................11

*WildEarth Guardians v. Bernhardt,*
501 F. Supp. 3d 1192 (D.N.M. 2020) ...................................................12

*Wyo. ex rel. Sullivan v. Lujan,*
969 F.2d 877 (10th Cir. 1992) ........................................................6, 7

**Statutes**

30 U.S.C. § 191 ...................................................................................6

30 U.S.C. § 201 ...................................................................................7

30 U.S.C. § 226 ...................................................................................8

43 U.S.C. § 1714 ...............................................................................26

43 U.S.C. § 1732 ...............................................................................29

**Regulations**

43 C.F.R. § 1610.5-3 .........................................................................29

43 C.F.R. § 1610.5-5 ....................................................................... 29

43 C.F.R. § 2300.0-5 .........................................................................27

43 C.F.R. § 3100.0-3 .........................................................................14

43 C.F.R. § 3120.1-1 .......................................................... 12, 13, 18, 29

Gulf of Mexico, Outer Continental Shelf, Oil and Gas Lease Sale 257, 86 Fed.
Reg. 10132 (Feb. 18, 2021) .......................................................... 2, 26

Minerals Management; General Oil and Gas Leasing; Noncompetitive
Leases: Competitive Leases: Oil and Gas Leasing–National Petroleum
Reserve–Alaska: Onshore Oil and Gas Operations: Onshore Oil and Gas
Unit Agreements–Unproven Areas: Geothermal Resources Leasing;
General: Geothermal Resources Unit Agreements–Unproven Areas, 53
Fed. Reg. 22814 (June 17, 1988) ...................................................... 12

Withdrawal of the Public Review Period for Cook Inlet Lease Sale 258, 86
Fed. Reg. 10994 (Feb. 23, 2021) .........................................................2

**Other Authorities**

Dep't of the Interior,  Instruction Memorandum No. 2010-117, Oil and Gas
    Leasing Reform Land Use Planning and Parcel Reviews (May 17, 2010)..........23

Live Testimony of Secretary Haaland before the United States Senate
    Committee on Energy & Natural Resources (July 27, 2021).................... 2, 21, 31

Merriam-Webster On-line Dictionary ....................................................................21

Valerie Volcovici & Jessica Resnick-Ault, *Biden's new climate orders to
    include pause on federal oil and gas leasing: sources*, (Reuters (Jan. 26,
    2021) ......................................................................................................................4

## GLOSSARY

Administrative Procedures Act .............................................................................. APA

Bureau of Land Management.................................................................................BLM

Environmental Assessment ..................................................................................... EA

Federal Land Policy and Management Act....................................................FLPMA

Land and Water Conservation Fund .............................................................. LWCF

Mineral Leasing Act.............................................................................................MLA

National Environmental Policy Act ..................................................................NEPA

Resource Management Plan...................................................................................RMP

Bureau of Land Management Wyoming State Office ....................Wyoming Bureau

# INTRODUCTION

Entering into the Fourth Quarter, the Secretary has yet to hold a single 2021 oil and gas lease sale in Wyoming. The Secretary denies the existence of a *de facto* moratorium on lease sales but publically acknowledges the "pause" exists. When confronted about the decision, she deflects, claiming concerns about litigation forced sale cancelations, although the administrative record says different. Finally, the Secretary asserts discretion to avoid a statutory mandate.

The Secretary's "pause" on oil and gas leasing is a *de facto* moratorium. Although not in writing, the Secretary's action has, and will continue, to result in injury to Wyoming. Her failure to hold quarterly lease sales is subject to review under the APA. Similarly, this Court can review independently the *pro forma* justifications offered by the Secretary for each canceled lease sale. This Court should find the Secretary's cancelation of scheduled lease sales in Wyoming: (1) violates the MLA and its implementing regulations; (2) unlawfully withdraws land and amends RMPs under FLPMA; and (3) violates NEPA by failing to consider the environmental impacts of suspending federal oil and gas leasing.

## I.      The *de facto* moratorium exists and is subject to review by this Court.

The Secretary "vigorously dispute[s]" the existence of a *de facto* moratorium on quarterly lease sales. (Fed. Br. at 22)[1]. This denial is no longer grounded in common sense or reality. On January 28, 2021, the day after Executive Order 14008 was issued, the Bureau acknowledged Executive Order 14008 and "paused" lease sale notices. (BLM_I001313-14). In February 2021, the Secretary published notices in the Federal Register suspending certain lease sale activities "to comply with Executive Order 14008." *See* 86 Fed. Reg. 10132 (Feb. 18, 2021); 86 Fed. Reg. 10994 (Feb. 23, 2021). The Secretary and her senior staff have made numerous public admissions that the "pause" on lease sales exists and is in place.[2] Finally, no quarterly lease sales have occurred in Wyoming since Executive Order 14008 was issued. The Secretary has also conceded that no lease sales under the MLA have occurred since Executive Order 14008 was issued and this Court should follow the United States District Court for the Western District of Louisiana and conclude that

---

[1] Citations to the Federal Respondents' Brief (Fed. Br.) are to *Respondents' Opposition to Wyoming's Brief on the Merits*, (ECF No. 87).

[2] (ECF No. 51-1); (Wyo. Br. at 14-15); Live Testimony of Secretary Haaland before the United States Senate Committee on Energy & Natural Resources (July 27, 2021), https://www.energy.senate.gov/hearings/2021/7/full-committee-hearing-to-examine-the-president-s-fy-2022-budget-request-for-the-department-of-the-interior (Video at 1:19:20 - Senator Hyde Smith: So the pause is not in place at this time? Secretary Haaland: Well technically, I suppose you can say the pause is still in place.).

the *de facto* moratorium on oil and gas leasing exists. *See Louisiana v. Biden*, No. 2:21-CV-00778, 2021 WL 2446010, at *14-16 (W.D. La. June 15, 2021).

The Secretary relies on a single email to defend her position that, as of March 1, 2021, there was no "pause." (Fed. Br. at 15) (citing BLM_I001180). But the same email concedes that the Secretary had already made up her mind:

> Department Officials with delegated authority to approve fossil fuel authorizations, including onshore lease sales, **are postponing further consideration of Quarter Two sales (including authorization of the sales)** pending decisions on how the Department will implement the Executive Order on Tackling the Climate Change Crisis at Home and Abroad with respect to onshore sales.

(BLM_I001180) (emphasis added).

In other words, the Secretary canceled Second Quarter 2021 lease sales and just needed to figure out how to justify the decision. The Secretary characterizes the email as canceling only the New Mexico Second Quarter lease sale. (*See* ECF No. 87-6 at 2); (Fed. Br. at 15). However, the plain language of the email contradicts this characterization because the email expressly references Second Quarter "lease sales" (plural) and makes clear that the Secretary will no longer accept authorization requests from State Bureau Offices to hold "sales" (plural). (BLM_I001180). While one slip of an "s" in an email can potentially be excused as the author's drafting error, two cannot. The Secretary's intent was communicated clearly – the Secretary

was implementing Executive Order 14008, she just did not know how to explain the decision yet.

Although the Secretary's implementation of Executive Order 14008 is cleverly disguised, this Court can review her unwritten action. (Wyo. Br. at 24-25). The Conservation Groups do not attempt to distinguish the cases cited by Wyoming that authorize judicial review of unwritten agency actions — instead they simply deny the existence of the *de facto* moratorium. (Conservation Br. at 15 n.3). If this Court needs any additional evidence of the Secretary's willingness to avoid any written documentation of its moratorium, it need only consider the swarm of emails that the Secretary offered with her response brief setting up conference calls with Bureau State Directors in Wyoming, Montana, and Utah to "discuss Quarterly Lease Sales" as the news broke that Executive Order 14008 would include a pause on oil and gas lease sales. (*See* ECF No. 87-6 at Ex. B).[3]

Furthermore, the administrative record does not need to reflect **formal documentation** of a change in policy to conclude that a changed occurred. *See Aracely v. Nielsen*, 319 F. Supp. 3d 110, 141 (D.D.C. 2018) (emphasis added); *see also Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 27 (D.D.C. 2019) ("[T]he Court will independently review the evidence in the record to determine

---

[3] Valerie Volcovici & Jessica Resnick-Ault, *Biden's new climate orders to include pause on federal oil and gas leasing: sources*, (Reuters (Jan. 26, 2021)), https://www.reuters.com/article/us-usa-drilling-biden-idUSKBN29V255

whether the Department in fact changed its practices[.]"). In this instance, the Secretary's actions speak for themselves. The cancelation of quarterly sales, in unison across the United States and, relying on the same blanket justification demonstrates that a change occurred and that a *de facto* moratorium was, and continues to be, in effect. (*See* BLM_I002415).

The Secretary argues Wyoming's claims are barred as "programmatic review" because Wyoming does not identify a specific agency action. (Fed. Br. at 21) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890-93 (1990). As stated in *Lujan*, "[u]nder … the APA, respondent must direct its attack against some particular 'agency action' that causes it harm." *Lujan*, 497 U.S. at 891. Wyoming's petition does just that, stating that "the Secretary's action to pause, postpone, cancel, or otherwise suspend federal oil and gas lease sales is a moratorium and is a final agency action[.]" (Wyo. Pet. ¶3).

Here, the Secretary's "failure to act" within a statutory deadline falls squarely within the APA definition of "agency action." *See Norton v. So. Utah Wilderness All.,* 542 U.S. 55, 63 (2004) (distinguishing an agency "denial" (saying No) from a failure to perform a discrete action such as meeting a statutory deadline). Wyoming's injury is now realized due to the Secretary's "failure to act" because it received no revenue from the canceled First, Second, and now Third Quarter 2021 Wyoming

lease sales that it would have otherwise received under federal law. (*See* ECF No. 45-5 ¶¶9-16 (Smith Aff., Case No. 21-cv-0056 (May 3, 2021))); 30 U.S.C. § 191.

## II.    This Court can compel quarterly oil and gas lease sales.

The Secretary argues this Court cannot compel the Secretary to hold quarterly lease sales because the Tenth Circuit concluded that Wyoming did not have standing to challenge a federal **land-exchange** involving federal **coal leasing**. (Fed. Br. at 27) (citing *Wyo. ex rel. Sullivan v. Lujan*, 969 F.2d 877 (10th Cir. 1992)) (emphasis added).

The Secretary's reliance on *Sullivan* fails for three reasons. First, two years after *Sullivan* was decided, the Tenth Circuit distinguished *Sullivan* and found courts can redress a loss of revenue caused by the federal government when local governments are guaranteed revenue sharing from the federal government. *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1451-52 (10th Cir. 1994) ("The County's situation differs significantly from that of the state in [*Sullivan*] v. Lujan. Here, the County is guaranteed revenue sharing and sales taxes in the event its requested relief is granted[.]"). In this case, *Mount Evans Company* is analogous. Wyoming has and will continue to suffer harm each quarter that passes without a competitive sale because Wyoming automatically receives a portion of the proceeds from each lease sale. *See* 30 U.S.C. § 191.

Second, *Sullivan* is factually distinct because it involved a specific inholding of land in Grand Teton National Park held by a charitable group with a coal patent. *Sullivan*, 969 F.2d at 879. When the parcel was exchanged for federal land in Sheridan County, the State of Wyoming alleged it was deprived revenue from the coal that would have otherwise been subject to competitive leasing. *Id.* In this case, Wyoming does not ask the Court to compel the Secretary to lease any specific parcel of land.

Third, the MLA's coal leasing provisions are distinguishable from the quarterly leasing requirement for oil and gas leasing. The relevant federal coal leasing provision provides "from time to time, … the Secretary may … negotiate the sale at fair market value of coal[.]" 30 U.S.C. § 201. Unlike the quarterly requirement for competitive oil and gas lease sales, the Secretary is not required to hold federal coal lease sales on a quarterly basis.

Wyoming's claims are redressable because this Court can order the Secretary to comply with the quarterly lease sale requirement, and regardless of the parcels offered for sale, Wyoming will receive revenue from the sales. Wyoming has demonstrated a "substantial likelihood" that its injury will be redressed if the Secretary is compelled to resume quarterly lease sales because federal law requires the sharing of lease sale revenues with Wyoming. *See, e.g, Teton Historic Aviation*

*Found. v. Dep't of Def.*, 785 F.3d 719, 725-27 (D.C. Cir. 2015); (*see also* ECF No. 45-5, ¶¶5-16).

The Conservation Groups take a different approach. They contend Wyoming is asking this Court to "issue oil and gas leases." (Conservation Br. at 16). Lease issuance occurs after a sale occurs and there is a successful bidder. 30 U.S.C. § 226(b)(1)(A). In its petition, Wyoming only asks this Court to enforce the Secretary's statutory duty to hold quarterly lease sales. (Wyo. Pet. ¶9). Additionally, the Group's reliance on *Marathon Oil Company*, similarly fails. (*See* Conservation Br. at 17) (citing *Marathon Oil Co. v. Babbitt*, 966 F. Supp. 1024, 1026 (D. Colo. 1997)). Wyoming does not seek the sale of any particular parcel, it seeks quarterly lease sales. *See Marathon Oil Co.*, 966 F. Supp. at 1025-26; (Wyo. Pet. at 9).

"Mandamus relief is an appropriate remedy to compel an administrative agency to act where it has failed to perform a nondiscretionary, ministerial duty." *Marathon Oil Co. v. Lujan*, 937 F.2d 498, 500 (10th Cir. 1991). Although the Supreme Court's ruling in *United States ex rel. McLennan v. Wilbur*, 283 U.S. 414, 419 (1931), recognized the Secretary has discretion in leasing decisions, subsequent congressional enactments, including the APA, FLPMA, and the 1987 MLA Amendments, put limits on that discretion. (Wyo. Br. at 2). With respect to the 1987 MLA Amendments, the Secretary's own Solicitor concluded that "Section 17(b)(1)(A) requires a quarterly lease sale wherever eligible lands are available for

leasing. The [legislative history] indicate[s] that Congress did not intend to give the Secretary any discretion in this regard. … A sale, however, must still be held each quarter." (BLM_I000008). The use of the mandatory "shall" in Section 226(b)(1)(A) in the MLA creates an obligation impervious to judicial discretion and allows this Court to compel quarterly lease sales in Wyoming. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998).

## III. The Secretary violated the MLA and its implementing regulations by failing to hold quarterly lease sales.

The Secretary asks this Court to rely exclusively on her definition of "available" in the Bureau Manual. (Fed. Br. at 35). The Secretary needs to make this case about a definition in a guidance document to achieve her objective — stopping all quarterly oil and gas lease sales. The problem with the Secretary's approach is that her desired objective conflicts with a clear statutory mandate and her regulations. This Court cannot allow the Secretary to avoid her statutory obligations.

"Notwithstanding [the deference owed to an agency], the Supreme Court has made it clear that reviewing courts are not to "rubber-stamp" administrative decisions that are inconsistent with the statutory mandate or legislative intent." *U.S. Dep't of Energy v. Fed. Labor Relations Auth.*, 880 F.2d 1163, 1165 (10th Cir. 1989) (citing *Fed. Labor Relations Auth. v. Aberdeen Proving Ground*, 485 U.S. 409, 414 (1988)). Similarly, when an agency does not comply with its own regulations, it acts

arbitrarily and capriciously. *N.M. Farm & Livestock Bureau v. U.S. Dep't of Interior*, 952 F.3d 1216, 1231 (10th Cir. 2020). As Wyoming has alleged from the outset, the Secretary's implementation of a *de facto* moratorium on quarterly lease sales contravenes both the MLA and the Secretary's regulations. (Wyo. Pet. ¶9).

## A.    Quarterly lease sales are mandatory under the MLA.

The Secretary did not respond to the core argument that Wyoming made in its petition and opening brief — that she cannot use her discretion to frustrate a statutory mandate. (Wyo. Pet. ¶9; Wyo. Br. at 28-29). The Secretary asserts that she retains unlimited discretion to contravene the limits Congress enacted in the 1987 MLA Amendments. (Fed. Br. at 3-4).

Wyoming previously outlined that Congress rejected a proposal that allowed the Secretary to "delay or postpone" lease sales. (Wyo. Br. at 3). The Secretary's Solicitor reached the same conclusion that the quarterly lease sale requirement did not intend to give the Secretary any discretion. (BLM_I000008). The use of the word "shall" in Section 226(b)(1)(A) provides the Secretary with no discretion to ignore Congress. *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 190-92 (D.C. Cir. 2016).

The Secretary also cannot use NEPA as an excuse for not performing a mandatory duty under the MLA. (Wyo. Br. at 33). She argues the Supreme Court ruling in *Flint Ridge*, which finds NEPA must yield to conflicting statutory authority, does not apply here because *Flint Ridge* involved an organic statute enacted before

10

NEPA. (Fed. Br. at 30) (citing *Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla.*, 426 U.S. 776 (1976)). Courts do not apply *Flint Ridge* so narrowly. *See, e.g., Pac. Legal. Found. v. Andrus*, 657 F.2d 829, 833-34 (6th Cir. 1981) (concluding a subsequently enacted statute conflicted with NEPA, and thus, NEPA must yield); *City of New York v. Mineta*, 262 F.3d 169, 178 (2d Cir. 2001) ("If a timeframe imposed by the [subsequently enacted] statute on an agency is too short for the agency to prepare an EIS, therefore, an EIS is not required."). Even so, this Court does not need to find that the mandatory quarterly lease sale requirement in the 1987 MLA Amendments implicitly repealed NEPA to conclude the Secretary unlawfully withheld agency action. Wyoming's argument is that the Secretary cannot ignore a clear deadline set by Congress using **her own failure** to complete NEPA. *See Westlands Water Dist. v. Nat. Res. Def. Council*, 43 F.3d 457, 460 (9th Cir. 1994) (finding NEPA must yield where "Congress did not give the Secretary discretion over when [she] may carry out [her] duties[.]"). *Flint Ridge* supports Wyoming's argument because in the event of a conflict, the court found an enabling statute takes priority over NEPA. Therefore, the Secretary cannot use NEPA to eviscerate the MLA's quarterly leasing requirement.

**B.**     **The Bureau Manual cannot be read independently of the Secretary's implementing regulations.**

The Secretary dismisses Wyoming's effort to bring the Secretary's implementing regulations to the attention of this Court as "cobbling together" a definition of "available." (Fed. Br. at 29). While the Secretary may disregard the significance of her own regulations, this Court cannot. *N.M. Farm & Livestock Bureau*, 952 F.3d at 1230 ("[W]hen [a court] consider[s] an agency action pursuant to a statute and an implementing regulation, [it] cannot ignore the regulatory context when determining whether that action was arbitrary and capricious.").

Both Petitioners specifically identify 43 C.F.R. § 3120.1-1 as instructive for determining what lands are "available" for leasing. (Wyo. Br. at 28; WEA Br. at 25-26). Section 3120.1-1, broadly, defines the categories of land that "shall be offered for competitive bidding." *See* 43 C.F.R. § 3120.1-1. At least one court agrees that Section 3120.1-1 is the basis for which the "BLM identifies land to be offered for sale based on 'competitive bidding.'" *WildEarth Guardians v. Bernhardt*, 501 F. Supp. 3d 1192, 1201 (D.N.M. 2020) (citing 43 C.F.R. § 3120.1-1). It is therefore relevant that when the Secretary promulgated Section 3120.1-1, the Secretary defined "available" as meaning "**any lands subject to leasing under the Mineral Leasing Act**" with respect to this specific regulation. 53 Fed. Reg. 22814, 22828 (June 17, 1988) (emphasis added).  This regulation, and its preamble, support a

federal oil and gas leasing program that generally make lands available to competitive leasing.

The Secretary challenges Wyoming's use of the MLA implementing regulations as a basis for defining which lands are "available" for leasing. (Fed. Br. at 32 n.8). But this Court does not need to adopt Wyoming's or its own definition of "available" to find the Secretary acted arbitrarily and capriciously — it need only look at the plain text of the regulation that the Secretary disregarded.

For example, the Wyoming Bureau identified and recommended seventeen parcels for the First Quarter 2021 Wyoming lease sale as "critical for drainage or unleased lands in existing producing agreements." (BLM_I001157). The Secretary unequivocally determined that there were no available lands for the First Quarter lease sale due to the purported reason that NEPA was not complete. (BLM_I001170). However, Section 3120.1-1 provides "[l]ands **which are otherwise unavailable** for leasing but which are subject to drainage (protective leasing)" shall be offered for competitive bidding. 43 C.F.R. § 3120.1-1(d) (emphasis added).

Even if this Court agrees with the Secretary's conclusion that no lands were available for the First Quarter Wyoming lease sale, the Secretary's regulation at Section 3120.1-1(d) required leasing of "unavailable" lands subject to drainage. The Secretary directly contravened the regulation by not offering lands for protective

leasing in Wyoming. *See N.M. Farm & Livestock Bureau*, 952 F.3d at 1231 ("When an agency does not comply with its own regulations, it acts arbitrarily and capriciously.").

The Secretary argues that Wyoming's use of the MLA's **existing** regulatory context will result in various fanciful outcomes. (*See* Fed. Br. at 34). Wyoming does not contend that lease sales must go forward without NEPA analysis. Wyoming believes the Secretary has a responsibility to complete NEPA analysis in a timely manner to faithfully discharge her duty to hold lease sales at least quarterly. In this instance, the administrative record reflects that the Wyoming Bureau not only prepared NEPA documentation, but was confident it could address any outstanding issues before any lease was issued. (BLM_I001157).

Similarly, the Secretary's argument that Wyoming's interpretation of the MLA's complete regulatory context requires the Secretary to lease on a variety of "protected" lands lacks credibility, ignores existing regulatory protections, and blurs the distinction between the meaning of "eligible" and "available." (*See* Fed. Br. at 34). As Wyoming has explained, "eligible" lands are lands not excluded by regulation under 43 C.F.R. § 3100.0-3. (Wyo. Br. at 28). Wyoming similarly does not contend that lands "closed" under existing RMPs are subject to leasing. (*Id.*).

In its petition, Wyoming makes clear that the Secretary violated the MLA and its implementing regulations when she canceled all lease sales in Wyoming. (Wyo.

Pet. ¶9). When reviewing agency action made pursuant to a statute and implementing regulation, the Court cannot ignore the regulatory context when determining whether the action was arbitrary or capricious. *N.M. Farm & Livestock Bureau*, 952 F.3d at 1230. Whether the Secretary complied with her regulation is a strictly legal question that this Court can resolve on the administrative record alone. *Id.* The Secretary's action (which relies solely on the definition of "available" in the Bureau Manual) conflicts with the plain requirements of Section 3120.1-1. Accordingly, this Court should find the Secretary's cancelation of lease sales in Wyoming was arbitrary and capricious.

### C.    This Court should not afford deference to the Secretary's definition of "available" in the Bureau Manual.

The Secretary requests deference for her interpretation in the Bureau Manual. (Fed. Br. at 28-34). This Court does not need to reach the question of whether the Secretary's interpretation demands deference because courts do not afford deference when the agency's interpretation is "plainly erroneous or inconsistent with the regulation." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (citation omitted).

With respect to the Secretary's *pro forma* justifications for canceling individual lease sales, the Secretary argues the Bureau Manual is entitled "up to *Chevron* deference." (Fed. Br. at 31). The law does not support such deference.

"Deference in accordance with *Chevron* [] is warranted only 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.'" *Gonzales v. Oregon,* 546 U.S. 243, 255-56 (2006) (citation omitted). Thus, where an agency's interpretation lacks the force of law, it is "beyond the *Chevron* pale." *United States v. Mead Corp.,* 533 U.S. 218, 234 (2001); *accord Christensen v. Harris Cty.,* 529 U.S. 576, 587 (2000). Because the Secretary's definition of "available" was adopted as guidance in the Bureau Manual, it carries no force of law. The Tenth Circuit has rejected previous efforts by the Secretary to accord *Chevron* deference to informal policy statements. *See So. Utah Wilderness All. v. BLM*, 425 F.3d 735, 759-60 (10th Cir. 2005).

The Secretary also requests *Auer* deference. (Fed. Br. at 32 n.9). But the Secretary does not purport to rely on her regulations, therefore, *Auer* deference is "unwarranted." *See Christopher*, 567 U.S. at 155.

Finally, the Secretary argues for "particular deference" with respect to her "longstanding" interpretation. (Fed. Br. at 31). However, "particular deference" is a relic of the pre-*Chevron* days. *See Barnhart v. Walton*, 535 U.S. 212, 226 (2002) (Scalia, J., concurring in part). Here, the Secretary's purported "longstanding" interpretation requires no particular deference because the Secretary's reliance on the Bureau Manual is "inconsistent with the regulation" at Section 3120.1-1. *See*

16

*Auer v. Robbins*, 519 U.S. 452, 461 (1997); *see also supra* III.B. In sum, the Secretary cannot use an interpretation in a guidance document to usurp existing obligations in the MLA or her implementing regulations.

## IV. The Secretary's *pro forma* justifications for canceling individual lease sales were arbitrary and capricious.

Wyoming challenges the *de facto* moratorium, but to the extent this Court independently reviews the cancelation of First and Second Quarter Wyoming lease sales as separate final agency actions, the Secretary's cancelations were arbitrary and capricious.

### A. The Secretary's decision to cancel the First Quarter Lease Sale did not consider relevant statutory requirements.

When the Secretary canceled First Quarter lease sales, she did not consider the portion of the MLA which requires lease sales be held at least quarterly. (Wyo. Br. at 31-32). The Secretary, however, distorts Wyoming's argument by turning it into whether the Secretary cited the appropriate provisions of law, which the Secretary concedes, left out a key portion of the MLA. (Fed. Br. at 39). But Wyoming did not challenge the Secretary's failure to properly cite the law. Wyoming argued that the administrative record does not reflect any consideration of how the Secretary's decision that no land was "available" for leasing conforms with the mandate from Congress that the Secretary hold quarterly lease sales. (Wyo. Br. at 32).

The arbitrary and capricious standard rests on whether the agency considered all relevant factors and whether there was a clear error in judgment. *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1574 (10th Cir. 1994). The Secretary did not consider several relevant factors, including the mandatory language from the MLA that lease sales be held "at least quarterly," the Solicitor's opinion that the obligation to hold quarterly lease sales did not come with discretion, and how the decision complied with the Secretary's existing regulations. The Secretary's failure to consider these factors and explain how her decision complied with the quarterly leasing requirement in the MLA is sufficient to find the action was "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with law." *See GasPlus, LLC v. U.S. Dep't of Interior*, 510 F. Supp. 2d 18, 33 (D.D.C. 2007).

## B.   Land was available for leasing in the First Quarter.

The Secretary adamantly argues no land was available in Wyoming for leasing in the First Quarter. (Fed. Br. at 35). As previously discussed, the Secretary did not take into account the seventeen parcels that the Wyoming Bureau recommended for leasing as critical for protective drainage. (*See* BLM_I001157). The Secretary's blanket determination that no land was available for leasing violated the regulation and was arbitrary and capricious. *See* 43 C.F.R. § 3120.1-1(d); *supra* at III.B.

**C.    The Secretary's argument that litigation precluded leasing is unsupported by the record and is a *post-hoc* rationalization.**

The Secretary insists that other litigation, specifically rulings in *WEG I* and *WEG II* are the basis for determining no lands were "available" for leasing in Wyoming for the First Quarter of 2021. (Fed. Br. at 35-38). The administrative record does not support the Secretary's argument. The Wyoming Bureau's request to notice the First Quarter sale did not expressly identify *WEG II* as litigation of concern, the request only identified the prior ruling in *WEG I*. (BLM_I001157). Although the Wyoming Bureau identified *WEG I* and district court orders in Idaho and Montana as concerning, it concluded that the concerns "[would] be addressed" in the EA and Protest Decision. (*Id.*).

Importantly, when the Secretary considered Wyoming's request to notice the First Quarter sale, the Secretary's stated reason for canceling the First Quarter lease sale in Wyoming did not rest on either *WEG I* or *WEG II*. (BLM_I001169-70). The Secretary's February 12, 2021 decision document identifies the November 13, 2020 court order in *WEG II* only in relation to proposed lease sales in Colorado and the Montana/Dakotas. (BLM_I001170). Specifically, in relation to *WEG II*, the document states "we advise you that there is a significant likelihood that analysis of the **Colorado and Montana/Dakotas** leases do not satisfy NEPA and is therefore vulnerable to litigation." (*Id.*) (emphasis added). The decision document concluded

19

"[w]e advise that each of the **Colorado and Montana/Dakotas** sales may not satisfy NEPA and therefore warrant postponement[.]" (*Id.*) (emphasis added).

In the same decision document, the Secretary concluded "[t]he Utah and Wyoming sales do not satisfy NEPA because they are not accompanied by any environmental analysis." (*Id.*). The administrative record indisputably shows that when the Secretary issued the "rationale" to cancel the First Quarter 2021 Wyoming lease sale, in no fashion did the she consider *WEG II* as the reason for canceling the Wyoming lease sale. If the Secretary was concerned about the impact on *WEG II* on the scheduled Wyoming lease sale, it was not documented in the administrative record.

The Secretary not only asks this Court to ignore what the administrative record says, but she now offers extra-record evidence from November 18, 2020, to inflate a theory raised for the first time in litigation – that the November 2020 decision in *WEG II* justified canceling the First Quarter 2021 Wyoming sale. (*See* Fed. Br. at 42) (citing ECF No. 87-1). This Court should flatly reject the Secretary's *post hoc* rationalization advanced by counsel to suggest *WEG II* was the reason for canceling the First Quarter Wyoming lease sale because the Secretary's theory directly conflicts with the Secretary's own administrative record. *See Olenhouse,* 42 F.3d at 1575 (rejecting "[a]fter-the-fact rationalization by counsel in briefs or argument[.]").

The Secretary similarly backtracks from her conclusion in the decision document that the environmental analysis for the First Quarter Wyoming lease sale did not exist to now claim the document was not ready. (Fed. Br. at 43). If this Court gives any weight to these extra-record submissions, the screen shots from the Bureau computer system only support Wyoming's argument that the Secretary chose to ignore the EA that the Wyoming Bureau prepared for the First Quarter sale. In the Bureau's own words, the Wyoming EA was re-routed because "there had not been enough time for Laura Daniel-Davis to make a decision[,]" but the EA certainly existed. (ECF No. 87-1 ¶8).

The Secretary and Conservation Groups contend Wyoming has not demonstrated that the Secretary operated under a pretext when canceling quarterly lease sales under the guise of NEPA. (Fed. Br. at 2; Conservation Br. at 36). Pretext requires a "strong showing of bad faith or improper behavior." *See Dep't of Commerce v. New York*, --- U.S. ---, 139 S. Ct. 2551, 2579 (2019) (Thomas, J., concurring in part). "Improper" is defined as acting "not in accord with fact, truth, or right procedure."[4] The Secretary has publically admitted the "pause" is in place. *Supra* at n.2. But in this litigation, she denies its existence. (Fed. Br. at 22). The Secretary similarly has offered various theories, which are disconnected from the explanation given in the administrative record, for why NEPA compliance required

---

[4] https://www.merriam-webster.com/dictionary/improper

her to cancel the First Quarter Wyoming sale. Finally, the Secretary has digressed to submitting extra-record evidence to support her various theories. The finding of a pretext under these circumstances is not unwarranted. *See Texas v. United States*, 809 F.3d 134, 172-176 (5th Cir. 2015). Even if the Secretary's actions are not sufficient to establish a pretext, they certainly cast doubt on the credibility of the Secretary's rationale.

**D.      Wyoming has standing to challenge the Second Quarter Lease Sale.**

The Conservation Groups contend Wyoming does not have standing beyond the March 2021 "Wyoming and Colorado Lease Sales." (Conservation Br. at 12-13). Wyoming does not dispute that its standing is limited to the cancelation of quarterly lease sales in Wyoming and does not assert standing for Colorado lease sales. Wyoming, however, rejects the Groups' effort to limit Wyoming's petition to only the First Quarter lease sale. Wyoming's petition challenged the Secretary's *de facto* moratorium, including the Second Quarter lease sale scheduled for the third week of June 2021 that the Secretary failed to notice. (Wyo. Pet. ¶5; BLM_I002428).

The Secretary contends "Wyoming misstates the law, as no agency guidance, let alone a binding law, required BLM to publish sale notice and NEPA documentation 90 days prior to lease sales." (Fed. Br. at 25). Wyoming made no such misstatement. The Secretary states that under Instruction Memorandum 2018-034 the Bureau was not required to issue notice more than 45-days prior to the sale.

(Fed. Br. at 25-26). The Secretary does not acknowledge that on February 27, 2020, an Idaho district court vacated, in part, the 2018 guidance and reinstated the "Lease Sale Parcel Protest" section from a previous version that in effect creates a ninety day notice requirement. *See W. Watersheds Project v. Zinke*, 441 F. Supp. 3d 1042, 1089-90 (D. Idaho 2020) ("IM 2018-034's at-issue provisions are set aside and IM 2010-117's corresponding provisions are reinstated"; "For all succeeding oil and gas lease sales, use of IM 2018-034, Section IV.B – "Lease Sale Parcel Protests" is enjoined and replaced with IM 2010-117, Section III.H – "Lease Sale Parcel Protests.").

The Idaho district court's reinstatement of Section III.H from a 2010 Instruction Memorandum, IM 2010-117, restored a ninety day sale notice requirement. Section III.H of IM 2010-117 requires that "**a 30-day protest period will begin the day the sale notice is posted**, as it has in the past. The earlier posting of **the sale notice will provide the state and field offices with at least 60 days to review protests before the oil and gas lease sale.**" Instruction Memorandum No. 2010-117 (May 17, 2010) (emphasis added).[5] In order to comply with the lease sale protest period reinstated by the Idaho district court, the Bureau was required to post its notice and accompanying NEPA compliance documentation ninety days prior to the Second Quarter 2021 lease sale.

---

[5] https://www.blm.gov/policy/im-2010-117

The Wyoming Bureau's First Quarter 2021 lease sale notice and accompanying NEPA documentation, posted on November 13, 2020, (well over 90 days in advance of the lease sale scheduled for the week of March 22, 2021) is evidence that the Bureau was operating under the Idaho district court order. (*See* BLM_I000335) ("The WSO fluid minerals staff prepares the EA and posts it on the ePlanning website for a 30-day public comment period. After the 30-day public comment period, the fluid minerals staff reviews and responds to the comments and makes changes to the EA if necessary.").

The Secretary contends Wyoming's petition challenging the Second Quarter 2021 Lease Sale should fail because it was filed 98 days before the end of the Second Quarter. (Fed. Br. at 26). But Wyoming was not required to wait until the end of the Second Quarter to file its petition. The Secretary's administrative record unquestionably shows the Second Quarter 2021 Wyoming lease sale was scheduled for the week of June 21, 2021. (BLM_I002428). Wyoming filed its petition on March 24, 2021 (89 days prior to the scheduled June 2021 sale) after the Secretary failed to provide notice and the accompanying NEPA documentation for the Second Quarter. (Wyo. Pet. at 5-6) ("[T]he Wyoming BLM State Office has yet to post a notice or environmental compliance documentation on the Wyoming lease sale scheduled for the third week of June 2021."). Wyoming's petition challenged the

24

cancelation of quarterly lease sales, including the Second Quarter 2021 sale in Wyoming, but the Secretary has simply chosen to disregard this fact.

Finally, the Secretary and Conservation Groups argue that Wyoming lacks standing to challenge the Second Quarter 2021 lease sale because the Secretary did not provide a public explanation for the cancelation until after Wyoming filed its petition. (Fed. Br. at 20; Conservation Br. at 10). Wyoming challenged the unwritten final agency action by the Secretary when she implemented Executive Order 14008 that suspended federal oil and gas leasing on a continuing basis. (Wyo. Pet. ¶¶3-5). Wyoming previously explained how this Court has jurisdiction to review unwritten policies. (*See* Wyo. Br. at 20-25).

To the extent the Court focuses exclusively on Wyoming's standing as it relates to justifications for individual lease sale cancelations, Wyoming established jurisdiction with both an actual and threatened injury from the Secretary's cancelation of the Second Quarter sale. Parties establish Article III standing with an allegation of "threatened or actual injury." *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974). At the time of filing, the actual injury existed because the Secretary failed to file notice of the Second Quarter lease sale meaning that the sale would not occur. Wyoming also faced a threatened injury because the Secretary's cancelation of all other lease sales, including the Secretary's February 18, 2021, acknowledgement in the Federal Register that it was doing so to "comply with Executive Order 14008"

meant that the decision to cancel the Second Quarter 2021 Wyoming sale had already been made. 86 Fed. Reg. at 10132; *see, e.g., Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1155 (10th Cir. 2005).

Wyoming's concern about the impending "formal" cancelation of the Second Quarter was not speculative. On April 21, 2021, the Secretary provided a single sentence decision, "the Bureau of Land Management is exercising its discretion to not hold lease sales in the 2nd quarter of the Calendar Year 2021." (ECF No. 51-5 at 1). The Secretary's failure to provide any explanation for the Second Quarter lease sale cancelation was arbitrary and capricious. *Devon Energy Prod. Co., LP v. Gould*, 421 F. Supp. 3d 1213, 1221 (D. Wyo. 2019).

## V.    The Secretary violated FLPMA.

The Secretary contends it is "surely" within her discretion to make all federal land unavailable for a single quarter if FLPMA authorizes the Secretary to segregate lands for up to two years. (Fed. Br. at 44). This argument has several problems. First, the Secretary's refusal to hold quarterly lease sales has gone well beyond the First Quarter with the Secretary conceding that no sales will occur for the remainder of 2021. (*See* Fed. Br. at 17 n.2).

Second, the Secretary cannot invoke and subsequently rely on her land "segregation" authority without following the procedure for segregating lands as required by FLPMA. *See* 43 U.S.C. § 1714(b). Segregation removes land from the

operation of public land laws "for a limited period of time" and still requires notice in the Federal Register. (*Id.*); 43 C.F.R. § 2300.0-5(m).

Third, Congress expressly limited the Secretary's authority to remove large tracts of land from the operation of the MLA and this Court does not need a formal order to find the Secretary abused her discretion. As this Court has held, "it was the intent of Congress with the passage of FLPMA to limit the ability of the Secretary of the Interior to remove large tracts of public land from the operation of the public land laws by generalized use of [her] discretion authorized under such laws." *Mountain States Legal Found. v. Andrus*, 499 F. Supp. 383, 395 (D. Wyo. 1980). FLPMA is a procedural statute, and the Secretary did not adhere to any of the requirements for withdrawing or segregating lands when she determined no lands are available for leasing in Wyoming.

Wyoming has addressed the Secretary's argument that Wyoming's challenge is premature because FLPMA speaks directly to "temporary" withdrawals of large tracts of land. (*See* Wyo. Br. at 36-37). Similarly, FLPMA does not define "public purpose[,]" but courts have recognized the breadth of this language and have not precluded withdrawals for the purpose of protecting the environment. *See Nat'l Mining Ass'n v. Zinke*, 877 F.3d 845, 867 (9th Cir. 2017). Finally, the Secretary's argument that she "sold" leases in 2021 carries no merit and intentionally misstates her action. (*See* Fed. Br. at 1, 19, 45).

As Wyoming previously explained, the parcels purportedly "sold" were in fact "issued" through the Secretary's non-competitive leasing process. (ECF No. 56 at 5-6). However, these parcels were the ones which received no successful bids during the Wyoming **December 2020** competitive sale and were offered non-competitively. (*Id.*). The Secretary's argument is irrelevant to this litigation because those lands were "available" at the time they were offered.

Finally, a withdrawal can occur in the absence of a formal order by the Secretary closing lands. *See Andrus*, 499 F. Supp. at 397. If this Court finds the Secretary withdrew or segregated land without following the procedure prescribed by law, it can either require the Secretary to cease withholding lands in Wyoming from oil and gas leasing or adhere to the process in FLPMA. *Id.*

The Secretary evades Wyoming's argument that she violated FLPMA by unlawfully amending RMPs by fabricating a concession. (*See* Fed. Br. at 46). Wyoming does not concede that the Secretary's Manual is the exclusive authority on determining which lands are "available" for leasing. As Wyoming explained, previous Secretaries operated under the regulatory framework which existed prior to Executive Order 14008 and which this Secretary now ignores. (*See* Wyo. Br. at 27-28). Wyoming finds support in precedent because courts have acknowledged that the relevant statutes, **the Secretary's regulations**, and the BLM Manual operate in concert. *See, e.g., W. Energy All. v. Zinke*, 877 F.3d 1157, 1162 (10th Cir. 2017)

(citing 43 C.F.R. § 3120.1-1(e)) (emphasis added). The Secretary's sole reliance on the BLM Manual is irreconcilable with her obligations under the statute and regulations. Land management decisions must conform to the approved RMP. 43 U.S.C. § 1732(a); 43 C.F.R. § 1610.5-3(a).

The Secretary offers no response to Wyoming's argument that the Secretary's action changed the scope of natural resource uses identified in existing RMPs. *Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 556 (9th Cir. 2006) (citing 43 C.F.R. § 1610.5-5). The Secretary "*must* amend a management plan when an action is proposed that changes either "the scope of resource uses" or the "terms, conditions and decisions" of the plan." *Id.* at 556. The administrative record reveals the Bureau's own concern about its land planning obligations following the issuance of Executive Order 14008. (Wyo. Br. at 41) (citing BLM_I001315). Regardless of the implications, the Secretary's implementation of the *de facto* moratorium contravened the governing RMPs, and therefore, violated FLPMA. *See Mont. Wildlife Fed'n v. Bernhardt*, No. CV-18-69-GF-BMM, 2020 WL 2615631, at *8-11 (D. Mont. May 22, 2020).

## VI.   The Secretary violated NEPA.

The cancelation of all lease sales is a major federal action which triggers NEPA. (Wyo. Br. at 45-47). The Secretary cannot describe the environmental impacts of her *de facto* moratorium because she did not consider any potential

impacts before implementing Executive Order 14008. She characterizes the decision to cancel leasing as a series of independent acts. (Fed. Br. at 50). But the Secretary cannot "segment" actions to disguise the environmental effects. *See Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 298 (D.C. Cir. 1987).

The Conservation Group's dismiss Wyoming's LWCF impacts as simply generat[ing] revenue for the State of Wyoming." (Conservation Br. at 46). Federal law requires the distribution of LWCF funds directly to federal agencies and states to improve public land and promote recreation. (*See* ECF No. 45-1, (Glenn Aff., Case No. 21-cv-0056 (May 3, 2021))). Impacts to outdoor recreation fall squarely within the preview of NEPA. S*ee Nat'l Parks & Conservation Ass'n v. FAA*, 998 F.2d 1523, 1532-33 (10th Cir. 1993). Although offshore oil and gas lease sale revenue funds the corpus of the LWCF fund, the LWCF program maintains strong support from a broad coalition of organizations. For each quarter that passes without a lease sale, fewer funds are collected for LWCF and subsequently distributed to states. A NEPA review of the Secretary's *de facto* moratorium would reveal this harm and allow the public to participate in considering the impacts of the decision to cancel quarterly lease sales.

## VII.   Permanent relief is warranted.

The parties have fully briefed matters relating to injunctive relief and Wyoming incorporates by reference those arguments in response to suggestions that

this Court is limited in the relief it can afford Petitioners. (ECF No. 45 (Mem. Supp. of Wyo's Mot. Prelim. Inj., Case No. 21-cv-0056 (May 3, 2021))) (ECF No. 56). In light of the June 15, 2021, nationwide injunction on the Secretary's "pause" on lease sales issued by the Louisiana district court, this Court sought the party's views on whether to stay the case. This Court subsequently found that the nationwide injunction rendered the party's preliminary injunction briefing materially moot. (ECF No. 64).

Four months after that injunction, nothing has changed. The Secretary has not held any quarterly lease sales in Wyoming. The Secretary has stated she is complying with the injunction but in the same breath has stated the "pause" is in place because the President has not rescinded Executive Order 14008.[6] What the Secretary proposes, at best, is a possible lease sale notice in December followed by a sale in 2022. Meanwhile the Secretary appealed the Louisiana district court's issuance of a nationwide injunction. While these facts do not cut to the merits before this Court, they are indicative of the Secretary's resolve to stop all quarterly lease sales and substantiate Wyoming's request for permanent relief.

## CONCLUSION

For the foregoing reasons, the State of Wyoming requests that the Court declare the Secretary's failure to hold quarterly lease sales unlawful, set aside the *de*

---

[6] *See* Haaland Testimony (July 27, 2021), *supra* n.2.

*facto* moratorium, compel the Secretary to hold the Wyoming lease sales unlawfully withheld as soon as reasonably possible, and order the Secretary to hold future quarterly lease sales on time.

Submitted this 19th day of October, 2021.

/s/ *Travis Jordan*
James Kaste (Wyo. Bar No. 6-3244)
Deputy Attorney General
Travis Jordan (Wyo. Bar No. 7-5721)
Senior Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895 (phone)
(307) 777-3542 (fax)
james.kaste@wyo.gov
travis.jordan@wyo.gov

*Attorneys for Petitioner*
*State of Wyoming*

## **STATEMENT OF COUNSEL AS TO ORAL ARGUMENT**

Petitioner, State of Wyoming requests oral argument.

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and this Court's order (ECF No. 96) because this brief contains 7,246 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and type style requirements of D. Wyo. Local Civ. R. 10.1(a) and Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Word 2010 in 14 point font size and Times New Roman.

/s/ *Travis Jordan*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on this 19th day of October 2021, I electronically filed the foregoing with the Clerk of the U.S. District Court for the District of Wyoming and served all parties using the CM/ECF system.

/s/ *Travis Jordan*